LARS T. FULLER (No. 141270)
JOYCE K. LAU (No. 267839)
THE FULLER LAW FIRM, P.C.
60 No. Keeble Ave.
San Jose, CA 95126
Telephone: (408)295-5595
Facsimile: (408) 295-9852

Attorneys for Debtor

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| In re:<br><br>K&D's SANTA CRUZ TIRE AND AUTO , INC.<br><br>Debtor | CASE NO.: 25-51258-MEH<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR AUTHORITY TO USE CASH COLLATERAL**<br><br>CHAPTER 11<br>[Sub-chapter V]<br><br>Date: None Set<br>Time: None Set<br>Court: 11 |

COMES NOW Debtor K&D's SANTA CRUZ TIRE AND AUTO , INC.. by and through The Fuller Law Firm, P.C., its attorneys of record, and respectfully submits the herein memorandum of points and authorities in support of Debtor's motion for use of cash collateral.

## I.    BACKGROUND

Debtor operates an auto repair garage.

1
Memorandum of Points and Authorities in Support of
Motion for Authority to Use of Cash Collateral

Debtor values its assets at approximately $1.75 Million inclusive of $1,384,104 in goodwill and $277,651.57 in cash deposits at Wells Fargo Bank. On or about June 2022 Debtor took out a US SBA loan through the Live Oak Banking Company by executing an SBA Promissory Note ("Note" hereinafter) and a Commercial Security Agreement in favor of the SBA ("Loan" hereinafter). The balance at the time of the filing of the petition was $1,484,722. Live Oak Banking Company perfected its security agreement by filing a UCC-1 on June 1, 2022 as File No. U220198611226. Debtor contends that the Live Oak Banking Company loan is slightly under-secured by approximately $29,836.

In addition, Debtor entered into four merchant agreements as follows:

| Date | Creditor | Filing No. | Collateral | Balance |
|---|---|---|---|---|
| 6-3-2025 | Funding Metrics, LLC | U250146346331 | Blanket except cash | 72,709 |
| 6-10-2025 | RDM Capital | U250152749527 | Blanket except cash | 186,265 |
| 6-16-2025 | Kash Advance | U250155137219 | Blanket except cash | 128,148.20 |
| 7-9-2025 | Select Funding, LLC | U250168498036 | Blanket except cash | 181,325 |

Debtor contends that all of these merchant cash advances (MCA's) were disguised loans at usurious rates of interest. All are totally under-secured.

A UCC-1 search reveals two more UCC-1's:

One is in favor of Bridgestone Americas Tire Operations (Bridgestone) which supplies tires to the Debtor. It is essentially fully secured by the tires. The other is for various leased equipment for which payments are current.

B. Debtor's WFB deposits are not Cash Collateral of the Lender

Com 9104(a)(2) provides:

2
Memorandum of Points and Authorities in Support of
Motion for Authority to Use of Cash Collateral

(a) A secured party has control of a deposit account if any of the following conditions is satisfied:

(1) The secured party is the bank with which the deposit account is maintained.

(2) The debtor, secured party, and bank have agreed in an authenticated record that the bank will comply with instructions originated by the secured party directing disposition of the funds in the deposit account without further consent by the debtor.

(3) The secured party becomes the bank's customer with respect to the deposit account.

Here the secured parties having rights to cash collateral are not the banking institution where Debtor maintains its deposits and there is no authenticated record of agreement between the secured creditors holding cash collateral rights and Debtor's banking institution.

Debtor now seeks authority to continue to use the cash, accounts receivable and inventory, which Debtor maintains is the cash collateral of the Live Oak Banking Company and other lienholders to continue operations by offering each lienholder a replacement lien in new inventory, accounts receivable and cash and paying adequate protection payments to Live Oak Banking Company, Inc. and to Bridgestone

## II. LEGAL ARGUMENT

**A. Debtor's Request to Use Cash Collateral and the Proposed Adequate Protection Payments**

a. Debtor's use of property of its estate is governed by section 363 of the Bankruptcy Code, which provides in pertinent part that:

> If the business of the debtor is authorized to be operated
> Under section … 1108 … of this title and unless the court
> orders otherwise, the [debtor] may enter into transactions,
> including the sale or lease of property of the estate, in the
> ordinary course of business, without notice or a hearing,

and may use property of the estate in the ordinary course
of business without or a hearing. 11 U.S.C. § 363(c)(1).

b. Section 363(c)(2)(A) of the Bankruptcy Code permits a debtor in possession to use cash collateral with the consent of the secured party. Section 363(e) of the Bankruptcy Code requires that the debtor adequately protect the secured creditor's interest in property to be used by a debtor against any diminution in value of such interest resulting from the debtor's use of the property during the chapter 11 cases.

c. What constitutes sufficient adequate protection is decided on a case-by case basis. Here, Debtor proposes to make adequate protection payments calculated by paying Live Oak Banking Company, which is almost fully secured, monthly payments of $18,008.29 (calculated by amortizing its balance over 10 years at 8% interest) and Bridgestone which is almost fully secured , monthly payments of $244.68/month (calculated by amortizing its balance over 5 years at 8% interest).

d. The Debtor believes that the proposed Adequate Protection payments are necessary and appropriate to ensure that Debtor can use the cash collateral and continue to sell the Bridgestone tires. Accordingly, the adequate protection proposed herein is fair and reasonable and sufficient to satisfy the requirements of sections 363(c)(2) and (e) of the Bankruptcy Code.

e. Debtor requests the Court's authorization to use Cash Collateral in the ordinary course of business subject to the budget set forth in the Declaration of Karl Ryan filed concurrent herewith.

4
Memorandum of Points and Authorities in Support of
Motion for Authority to Use of Cash Collateral
Case: 25-51258    Doc# 14-1    Filed: 08/25/25    Entered: 08/25/25 16:58:38    Page 4 of 6

### B. Failure to Use the Cash Collateral will Cause Immediate and Irreparable Harm

a.. Without the use of the Cash Collateral, Debtor will have limited ability to operate its business. Debtor may be unable to pay for employee wages, new supplies, rent and other operating expenses. In such event, Debtor will lose its customers and customer base causing immediate and irreparable harm to the Debtor's estate.

b. Debtor is able to remain current on its operating expenses if it is able to use cash collateral (its cash, accounts receivable and inventory) to pay its monthly expenses. Debtor therefore seeks authority to use the Cash Collateral to prevent immediate and irreparable harm to Debtor's estate.

WHEREFORE, Debtor prays for an order:

1. Allowing Debtor to use cash, accounts receivable and inventory to continue operations subject to the limitations set forth herein.
2. Condition the use of such receipts and cash by giving all lienholders a replacement lien for a like amount (in the same order and priority as their pre-petition liens) in post-petition receipts, accounts receivable and inventory, until the earlier of the Final Hearing or such time as the herein case is confirmed, dismissed or converted.
3. Condition the use of such receivables on payment to Live Oak Banking $18,008.29 /month commencing on Sept. 15, 2025 and continuing on the 15th day of the month thereafter, pending further order of the Court.

5
Memorandum of Points and Authorities in Support of
Motion for Authority to Use of Cash Collateral
Case: 25-51258    Doc# 14-1    Filed: 08/25/25    Entered: 08/25/25 16:58:38    Page 5 of 6

4. As to Bridgestone Americas Tire Operations (Bridgestone), condition the sale of tire inventory on the [payment to Bridgestone $244.68/month commencing on Sept. 15, 2025 and continuing on the 15th day of the month thereafter, pending further order of the Court.

5. And for such other and further relief as is just and equitable.

Respectfully submitted,

Dated: August 21, 2025	THE FULLER LAW FIRM, P.C.

By: */s/ Lars. T. Fuller*
LARS T. FULLER
Attorney for Debtor