| Fill in this information to identify the case: |
|---|
| Debtor Name: K&D Santa Cruz Tire and Auto, Inc. |
| United States Bankruptcy Court for the Northern District of California |
| Case Number: 25-51258 |

☐ Check if this is an amended filing

Northern District of California

# Plan of Reorganization for Small Business Debtor Under Chapter 11, Subchapter V

## K&D SANTA CRUZ TIRE and AUTO, INC.'s Plan of Reorganization, Dated Nov. 14, 2025

### Background for Cases Filed Under Subchapter V

**A. Description and History of the Debtor's Business**

The Debtor is a corporation. Since May 2022 the Debtor has been in the business of providing full service auto care including repairs, alignment and tire sales. With the assistance of Live Oak Funding Company financing (an SBA loan), Debtor acquired the assets of another auto care company that was in business since 2003 and hence has a broad local customer base.

Being the subject of a banking scam and with a slowdown in business, Debtor took out merchant cash advance loans. The onerous repayment terms, however, only further squeezed cash-flow precipitating the herein filing. With the assistance of a business consultant, Debtor has been able to turn its business around from a loss of $ $30,200 in Sept 2025 to a gain of $86,519 in October 2025 with November appearing to be a good month.

**B. Liquidation Analysis**

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such creditors and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to the Plan as <u>Exhibit A</u>.

The Debtor's liquidation analysis shows that unsecured creditors would receive $51,531 if the assets were liquidated in Chapter 7.

**C. Ability to Make Future Plan Payments and Operate Without Further Reorganization**

The Debtor must also show that it will have enough cash to make the required Plan payments and operate the debtor's business, if contemplated by the Plan.

The Debtor has provided projected financial information / feasibility analysis as <u>Exhibit B</u>. Debtor's projected effective date feasibility analysis is set forth in <u>Exhibit C</u>. The historical pre-petition cashflow and the 2 month post-petition cash-flow is set forth in Exhibit E.

The Debtor's financial projections show that the Debtor will have projected disposable income (as defined by § 1191(d) of the Code) for the period described in § 1191(c)(2) of the Code (3 to 5 years) of **$1,545,480**

The final Plan payment is expected to be paid on March 2029 which is anticipated to be 36 months after the effective date.

**You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.**

Debtor Name _____  Case Number _____

Debtor Name _____   Case Number _____

# Article 1: Summary

This Plan of Reorganization (the "Plan") under chapter 11 of the Bankruptcy Code (the "Code") proposes to pay creditors of K&D Santa Cruz Tire & Auto, Inc. (the Debtor) from operations.

This Plan provides for:

| | |
|---|---|
| 0 | classes of priority claims; |
| 6 | classes of secured claims; |
| 1 | classes of non-priority unsecured claims; and |
| 1 | classes of equity security holders. |

Non-priority unsecured creditors holding allowed claims will receive distributions, which the proponent of this Plan has valued at approximately 30 cents on the dollar, consistent with the liquidation analysis in Exhibit A and projected disposable income in Exhibit B. This Plan also provides for the payment of administrative and priority claims.

All creditors and equity security holders should refer to Articles 3 through 6 of this Plan for information regarding the precise treatment of their claim. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

# Article 2: Classification of Claims and Interests

| | | |
|---|---|---|
| 2.01 | **Class 1** Live Oak Banking Co. | The claim of Live Oak Banking Co, to the extent allowed as a secured claim under § 506 of the Code. |
| 2.02 | **Class 2A** Funding Metrics, LLC DBA Lendini | The claim of Funding Metrics, LLC DBA Lendini, to the extent allowed as a secured claim under § 506 of the Code. |
| 2.03 | **Class 2B** RDM Capital Funding DBA Fin Tap | The claim of RDM Capital Funding DBA Fin Tap, to the extent allowed as a secured claim under § 506 of the Code. |
| 2.04 | **Class 2C** Kash Advance, LLC | The claim of Kash Advance, LLC, to the extent allowed as a secured claim under § 506 of the Code. |
| 2.05 | **Class 2D** Select Funding | The claim of Select Funding, to the extent allowed as a secured claim under § 506 of the Code subject to Debtor's assertion of preference. |
| 2.06 | **Class 2E** Bridgestone Americas Tire Operations, LLC | The claim of Bridgestone Americas Tire Operations, Inc., to the extent allowed as a secured claim under § 506 of the Code subject to Debtor's assertion of preference. |
| 2.03 | **Class 3** …………………. | All non-priority unsecured claims allowed under § 502 of the Code. |
| 2.04 | **Class 4** …………………. | Equity interests of the Debtor. |

## Article 3: Treatment of Administrative Expense Claims, and Priority Tax Claims

| | | |
|---|---|---|
| 3.01 | **Unclassified claims** | Under § 1123(a)(1) of the Code, administrative expense claims, and priority tax claims are not classified. |
| 3.02 | **Administrative expense claims** | List each holder of an administrative expense claim allowed under § 503 of the Code that will be paid in full on the effective date of this Plan, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.<br><br>The Fuller Law Firm, P.C. shall be paid the full amount of its Court-approved fees and costs in the estimated amount of $20,000 from available cash within 10 days of entry of an order approving compensation,<br><br>Christopher Hayes, the Subchapter V Trustee, shall be paid the full amount of his Court-approved fees and costs in the estimated amount of $10,000 the latter of the Effective Date of the Plan or upon Court approval of compensation. |
| 3.03 | **Priority tax claims** | List each holder of a priority tax claim that will be paid [Specify terms of treatment consistent with § 1129(a)(9)(C) of the Code]. |

## Article 4: Treatment of Claims and Interests Under the Plan

4.01 **Claims and interests shall be treated as follows under this Plan:**

| Class | Impairment | Treatment |
|---|---|---|
| Class 1 – **Secured Claim of Live Oak Banking Co.** | ☐ Impaired<br>☒ Unimpaired | Debtor shall pay the Class 1 claimant in full by making the regular contractual payments to the Class 1 creditor [in the present amount of $25,126.28] pursuant to the terms of the note, including any adjustments from time to time [next adjustment not until Nov. 2029] and cure any post-petition arrears (representing the difference between the contractual payment and the adequate protection payment of $18,008.29) in the estimated amount of $36,735 together with interest at 10% per annum on the Effective Date. |
| Class 2A – **Secured claim of Funding Metrics, LLC DBA Lendini** | ☒ Impaired<br>☐ Unimpaired | The Class 2A Creditor shall be paid the full amount of its claim over 36 months in payments of $4,036.28/mo. including interest at 7.5% per annum with payments commencing on the 1st day of the month following the Effective Day of the Plan. |
| Class 2B – **Secured claim of RDM Capital Funding DBA Fin Tap** | ☒ Impaired<br>☐ Unimpaired | The Class 2B Creditor shall be paid the full amount of its claim over 36 months in payments of $4,510.40/mo. Including interest at 7.5% per annum with payments commencing on the 1st day of the month following the Effective Day of the Plan. |

| | | |
|---|---|---|
| Class 2C – **Secured claim** of Kash Advance, LLC | ☒ Impaired<br>☐ Unimpaired | The Class 2C Creditor shall be paid the full amount of its allowed claim over 36 months in payments of $3,986.21/mo. including interest at 7.5% per annum with payments commencing on the 1st day of the month following the Effective Day of the Plan. |
| Class 2D – **Claim** of Select Funding, LLC | ☒ Impaired<br>☐ Unimpaired | The Class 2D Creditor Select Funding, filed a UCC-1 on July 9. 2025, within the 90 day preference period. Hence its lien is avoidable as a preference. It filed an unsecured claim. Further its lien, if any there be, is under-secured absent a deposit account control agreement with Debtor's bank at the time of the filing of the UCC-1, which Debtor contends did not exist. The Class 2D creditor shall be paid together with the General unsecured Creditors as a Class 3 creditor. |
| Class 2E – **Claim** of Bridgestone Americas Tire Operations | ☒ Impaired<br>☐ Unimpaired | The Class 2E Creditors is fully secured by inventory that it furnished to the Debtor. It shall be paid the full amount of its allowed claim (scheduled at $12,067.97) on the Effective Date. |
| Class 3 – **Non-priority unsecured creditors** | ☒ Impaired<br>☐ Unimpaired | General unsecured creditors shall receive a pro-rata share of a pot of $144,586 disbursed in monthly payments of $4,016.28 over 36 months distributed pro-rata commencing on the first day of the month after the Effective Date of the Plan and continuing on the first day of the month each and every month thereafter for 35 additional months. The estimated claim amount, total distribution and monthly dividend is set forth in Exhibit "D". |
| Class 4 – **Equity security holders of the Debtor** | ☐ Impaired<br>☒ Unimpaired | Equity holders shall retain their equity position unaltered. |

### Article 5: Allowance and Disallowance of Claims

| | | |
|---|---|---|
| 5.01 | **Disputed claim** | A *disputed claim* is a claim that has not been allowed or disallowed [by a final non- appealable order], and as to which either:<br>(i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or<br>(ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated. |
| 5.02 | **Disputed claim reserve** | Debtor will create a reserve for disputed claims. Each time Debtor makes a distribution to the holders of allowed claims, Debtor will place into a reserve the amount that would have been distributed to the holders of disputed claims if such claims had been allowed in the full amount claimed. If a disputed claim becomes an allowed claim, Debtor shall immediately distribute |

|     |     |     |
| --- | --- | --- |
|     |     | to the claimant from the reserve an amount equal to all distributions due to date under the plan calculated using the amount of the allowed claim. Any funds no longer needed in reserve shall be ☒ returned to Debtor or ☐ distributed *pro-rata* among allowed claims in this class. |
| 5.03 | **Delay of distribution on a disputed claim** | No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order. |
| 5.04 | **Settlement of disputed claims** | The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Federal Rule of Bankruptcy Procedure 9019. |

## Article 6: Provisions for Executory Contracts and Unexpired Leases

| | | |
|---|---|---|
| 6.01 | **Assumed executory contracts and unexpired leases** | The Debtor assumes, and if applicable assigns, the following executory contracts and unexpired leases as of the effective date: |

| Counter Party | Description | Estimated Cure Amount | Installment Amount | Number of Installments |
| --- | --- | --- | --- | --- |
| LANgineers Business Phone Systems | Phone System | $0 | $470.00 | Renews |
| Opus Inspection | Equipment OBD System Benchtop, OBD System Wall Mount; OBD System Cabinet; Gen 3 Analyser, Purge Air Install kit ; 15ft OBO2 DLT Cable | $0 | $678.08 | Monthly renewal |
| Bank of the West | New Hunter 14K Lb Scissor Rack Pkg | $0 | $2,362.45 | 20 mo. |
| Jim & Lorna Jordan | Real property at 2840 Soquel Ave. Santa Cruz, CA95060 | | $12,691.35 | 66 months remaining |

| | | |
|---|---|---|
| 6.02 | **Rejected executory contracts and unexpired leases** | (a) The Debtor rejects the following executory contracts and unexpired leases as of the effective date: |

| Counter Party | Description | Estimated Unsecured Claim |
| --- | --- | --- |
| None | | $ |
|  | | $ |

(b) The Debtor shall be deemed to reject all executory contracts and unexpired leases that are not specifically assumed in section 6.01(a) of this Plan.

A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than be ☒ 30 days or ☐ _____ days after the date of the order confirming this Plan.

[

| Debtor Name | | Case Number | |
|---|---|---|---|

## Article 7: Means for Implementation of the Plan

Mr. Ryan and Mrs. Ryan will continue to serve as directors and officers of Debtor and continue with day to day management and operations. . Debtor may employ a business consultant to assist with streamlining operations and for business promotions. Debtor has more than sufficient cash to pay administrative claims and priority claims on the Effective Date and to provide for a buffer for any slow months.

## Article 8: General Provisions

**8.01 Definitions and rules of construction**

The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions:

**8.02 Effective date**

[Select one]

☒ The effective date of this Plan is the first business day following the date that is 14 days after the entry of the final confirmation order, except that the requirement of finality may be waived by the Debtor. If a stay of the confirmation order is in effect on that date, the Debtor may elect to treat the effective date as the first business day after the date on which the stay expires or is otherwise terminated.

☐ The effective date of this Plan is [describe]:

**8.03 Vesting at Confirmation**

Property of the estate shall: [select one]

☒ revest in the Debtor upon confirmation of the Plan.

☐ not revest in the Debtor at confirmation, but shall be delayed and thereafter vest in the Debtor at the earlier of: (a) completion of all payments due under the Plan; (b) dismissal; (c) discharge; or (d) closing of the case.

☐ [describe]:

**8.04 Plan Disbursements**

After confirmation, all payments due to creditors under the Plan shall be disbursed by the:

☒ Debtor.

☐ Subchapter V Trustee.

☐ [describe]:

Notwithstanding § 1194(b) of the Code, and unless otherwise ordered by the Court, Debtor shall be authorized to make all payments due to creditors under the Plan if such election is made in this section of the Plan.

If required to make distributions to creditors under the Plan or perform any post-confirmation services, the Subchapter V Trustee shall be entitled to compensation consistent with the hourly rate set forth in the *Verified Statement of Subchapter V Trustee* filed in the Case and reimbursement for all actual and necessary expenses incurred. Post-confirmation compensation due and payable to the Subchapter V Trustee may reduce payments to general unsecured creditors.

**8.05 Severability**

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

| | | |
|---|---|---|
| 8.06 | **Binding effect** | The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity. |
| 8.07 | **Captions** | The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan. |
| 8.08 | **Controlling effect** | Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of California govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan. |
| 8.9 | **Corporate governance** | Confirmation of the Plan shall be deemed to prohibit the issuance by the Reorganized Debtor of nonvoting securities to the extent required under § 1123(a)(6) of the Code. |
| 8.10 | **Payments** | All payments to be made under the Plan for professional services, costs, or expenses in connection with the case or the Plan as required by §§ 330 and 331 of the Code shall be subject to the approval of the court. |
| 8.11 | **Officers and Directors** | The officers and directors of the Debtor shall remain in their roles post-confirmation, except None. |
| 8.12 | **Insider Retention** | The insiders who were employed or retained by the Debtor shall remain in their roles post-confirmation, at the same or comparable compensation, except the salaries to the principals shall increase by $1,000/month to $8,000/month, each, an amount that is still less than the market salaries for their positions. However, the principals agree to decrease their salaries to post-petition pre-confirmation levels in the event such cuts are needed to fund the plan. |
| 8.13 | **Defaults and Remedies** | Failure to pay any amount due under this Plan within 20 days of the due date shall constitute a Default. Upon the occurrence of a Default, any affected creditor may give 15 days' Notice of Default. Absent a cure within that period, the creditor may present a Motion seeking appropriate relief from the Court, which relief may but need not include conversion of the case to one under Chapter 7 of the Code. |
| 8.14 | **Retention of Jurisdiction** | The Court may exercise jurisdiction over proceedings concerning: (a) whether Debtor is in Material Default of any Plan obligation; (b) whether the time for performing any Plan obligation should be extended; (c) adversary proceedings and contested matters pending as of the Effective Date or specifically contemplated in this Plan to be filed in this Court; (d) whether the case should be dismissed or converted to one under Chapter 7; (e) any objections to claims; (f) compromises of controversies under Federal Rule of Bankruptcy Procedure 9019; (g) compensation of professionals; and (h) other questions regarding the interpretation and enforcement of the Plan. |
| 8.15 | **Deadline for Election Under 11 U.S.C. § 1111(b)** | Any creditor that wishes to make an election under section 1111(b)(2) of the Code shall do so no later than 10 days following the filing of the Plan. |

## Article 9: Discharge

[Select one]

☒ Debtor is entitled to a discharge pursuant to § 1141(d)(3) of the Code.

☐ Debtor is not entitled to a discharge pursuant to § 1141(d)(3) of the Code.

[Select one]

☐ **Discharge if the Debtor is an individual under Subchapter V**
If the Debtor's Plan is confirmed under § 1191(a) of the Code, on the effective date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code. The Debtor will not be discharged from any debt excepted from discharge under § 523(a) of the Code, except as provided in Federal Rule of Bankruptcy Procedure 4007(c). Pursuant to § 1181(a) of the Code, § 1141(d)(5) of the Code does not apply.

If the Debtor's Plan is confirmed under § 1191(b) of the Code, confirmation of the Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the Plan's term, which could range from 3-5 years, pursuant to § 1191(c)(2) of the Code, or as otherwise provided in § 1192 of the Code. The Debtor will not be discharged from any debt:
    (i) on which the last payment is due after the conclusion of the Plan's term, which could range from 3-5 years, pursuant to § 1191(c)(2) of the Code, or as otherwise provided in § 1192 of the Code; or
    (ii) excepted from discharge under § 523(a) of the Code, except as provided in Federal Rule of Bankruptcy Procedure 4007(c).

☐ **Discharge if the Debtor is a partnership under Subchapter V**
If the Debtor's Plan is confirmed under § 1191(a) of the Code, on the effective date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code.

If the Debtor's Plan is confirmed under § 1191(b) of the Code, confirmation of the Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the Plan's term, which could range from 3-5 years, pursuant to § 1191(c)(2) of the Code, or as otherwise provided in § 1192 of the Code. The Debtor will not be discharged from any debt on which the last payment is due after the conclusion of the Plan's term, which could range from 3-5 years, pursuant to § 1191(c)(2) of the Code, or as otherwise provided in § 1192 of the Code.

☒ **Discharge if the Debtor is a corporate entity under Subchapter V**
If the Debtor's Plan is confirmed under § 1191(a) of the Code, on the effective date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt to the extent provided in § 1141(d)(6) of the Code.

If the Debtor's Plan is confirmed under § 1191(b) of the Code, confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the Plan's term, which could range from 3-5 years, pursuant to § 1191(c)(2) of the Code, or as otherwise provided in § 1192 of the Code. The Debtor will not be discharged from any debt on which the last payment is due after the conclusion of the Plan's term, which could range from 3-5 years pursuant to § 1191(c)(2) of the Code, or as otherwise provided in § 1192 of the Code.

### Article 10: Other Provisions

Debtor has the right to prepay any or all payments under the plan at any time.

Respectfully submitted,

_____   Karl Ryan
[Signature of the Debtor]           _____
                                    [Printed Name]

_____   _____
[Signature of the Co-Debtor]        [Printed Name]

| Debtor Name | | Case Number | |
|---|---|---|---|

| /s/ Lars T. Fuller | Lars T. Fuller |
|---|---|
| [Signature of the Attorney for the Debtor] | [Printed Name] |

### Article 11: Attorney Certification

I am legal counsel for the Debtor in the above-captioned case and hereby certify that the foregoing plan is a true and correct copy of the *Plan of Reorganization for Small Business Debtor Under Chapter 11, Subchapter V* promulgated by the Northern District of California on June 5,, 2024 (the "Standard-Form Plan") and

[Select one]

☐ There are no alterations or modifications to any provision of the Standard-Form Plan;

☐ Attached hereto as **Exhibit** ___ is a redline of Debtor's Plan identifying all alterations or modifications made to any provision of the Standard-Form Plan; or

☒ Below are all alterations or modifications made to any provision of the Standard-Form Plan:

Article 2; Section 2.01.Eliminated this section because there are no priority non administrative non tax claims.

Article 10: Added a provision allowing Debtor to prepay any payments under the plan at any time.

Exhibit B Disposable Income Analysis. Added additional categories and renamed categories to better fit business

I declare that the foregoing is true and correct. Executed this 14th_ day of November, 2025

| /s/Lars T. Fuller | Lars T. Fuller |
|---|---|
| [Signature of the Attorney for the Debtor] | [Printed Name] |



## Exhibit A: Liquidation Analysis

**Real Property - None**

| Fair Market Value | Liens | Cost of Sale | Resulting Income Tax | Exemption | Net Proceeds |
|---|---|---|---|---|---|
| $ | 1st $ | $ | $ | $ | $ |
|   | 2nd $ |   |   |   |   |
|   | 3rd $ |   |   |   |   |

[Insert additional tables for each parcel of real property]

**Personal Property** [Business cases only]

| Description | Value (Per Operating Reports) | Recognizable Value |
|---|---|---|
| Cash | $488,091.38 | $488,091.38 |
| Accounts Receivables (ERTC Receivable) | $100,270.24 | $100,270.24 |
| Notes Receivables | $ | $ |
| Inventory | $50,000 | $ 50,000 |
| Work in Progress | $ | $ |
| Equipment | $42,724.56 | $ 42,724.56 |
| Leasehold Improvements | $ | $ |
| Furniture and Office Equipment | $ | $ |
| Other Personal Property-Goodwill | $ | $1,384,104 |
| Secured Debt (UCC Filings) |   | $ 1,890,010 |
| **Net Personal Property** |   | **$175,180.18** |

| | | |
|---|---|---|
| Net Proceeds of Real Property and Personal Property | | 175,180.18 |
| Recovery from Preferences and Fraudulent Conveyances | [ADD] | $0 |
| Chapter 7 Administrative Claims | [SUBTRACT] | $ |
| Chapter 11 Administrative Claims | [SUBTRACT] | $30,000 |
| Priority Claims | [SUBTRACT] | $8,442.85 |
| Chapter 7 Trustee Fees (11 U.S.C. § 326) | [SUBTRACT] | $85,205.71 |
| Chapter 7 Trustee's Professionals | [SUBTRACT] | $ |
| **Net Funds Available for Distribution to Unsecured Creditors** | | **$51,531.44** |

| | |
|---|---|
| Estimated Amount of Unsecured Claims | $481,953 |
| Percent Distribution to Unsecured Creditors Under Plan | 30% |
| Percent Distribution to Unsecured Creditors Under Liquidation Analysis | 10.7% |



## Exhibit B: Disposable Income Analysis

[Business cases only]

| Revenue | Amount |
|---|---|
| Sales | $210,000 |
| Costs of Goods Sold [Subtract] | - $ 56,700 |
| Other Income [Describe] | $ |
| Positive Cash Flow on Investment Property | $ |
| **A. Total Monthly Revenue** | **$153,300** |

| Operating Expenses | Amount |
|---|---|
| Wages, Salaries, and Payroll exp | $66,705 |
| Rent | $12,720 |
| Utilities (Electricity, Phone, Internet, Alarm) | $ 3,000 |
| Advertising / Marketing | $ 2,720 |
| Shop and Office Supplies | $ 1,285 |
| Office Equipment / Machinery (Equipment leases and rental) | $ 3,710 |
| Computer and Technology | $ 1,010 |
| Vehicle Expense | $ 540 |
| Insurance | $ 6,500 |
| Repairs and Maintenance | $ 230 |
| Sublet Labor | $ 2,995 |
| Laundry & Uniforms | $ 375 |
| Bank Fees (Merchant Credit card fees) | $ 3,990 |
| Property taxes (Real property passthrough and personal property tax) | $ 940 |
| Professional fees (Accounting) | $ 500 |
| Professional fees- consulting | $ 500 |
| Travel, Entertainment and Employee meals | $ 2,550 |
| State income taxes | $ 100 |
| **B. Total Monthly Operating Expenses** | **$110,370** |

| Plan Payments | Amount |
|---|---|
| Class 1 – Live Oak Banking Co. | $25,126.28 |
| Class 2A - Funding Metrics (Lendini) | $4,036.28 |
| Class 2 B– RDM Capital (Fin Tap) | $4,510.40 |
| Class 2C Kash Advance | $3,986.21 |
| Class 3- General unsecured | $4,016.28 |
| Priority Claims | $ |
| Subchapter V Trustee Fees | $ |

| Debtor Name | | Case Number | |
|---|---|---|---|

| | |
|---|---|
| Administrative Claims (Pre-Confirmation) | $ |
| Administrative Claims (Post-Confirmation) | $ |
| Other [Describe]: | $ |
| **C. Total Monthly Plan Payments** | **$41,674.45** |

| | | |
|---|---|---|
| **D. Net Operating Income** | [Line A – Line B – Line C] | **$1,255.55** |

| Available Operating Capital | | Amount |
|---|---|---|
| Cash Balance at Beginning of Month | | **$354,091** |
| Net Operating Income (or Loss) | [Line D] | **$1,255.55** |
| **E. Cash Balance at End of Month** | | **$355,346.55** |

| | |
|---|---|
| **F. Projected Disposable Income for 36 Year Plan Term** | **$1,545,480** |

### Exhibit C: Effective Date Feasibility Analysis

| Cash on Effective Date | | Amount |
|---|---|---|
| Cash in all Debtor in Possession (DIP) Accounts | | $354,,091 |
| Anticipated Cash Increase or Decrease | [From Plan Filing to Effective Date] | $ 30,000 |
| **A. Total Cash on Effective Date** | | **$384,000** |

| Payments on Effective Date | Amount |
|---|---|
| Class 1 – Live Oak Banking Co. pot-petition arrears | $36,735 |
| Class 2E – Bridgestone Americas Tire Operation | $12,068 |
| Class 3 | $ |
| Class 4 | $ |
| Priority Claims | $ 8,443 |
| Subchapter V Trustee Fees | $10,000 |
| Administrative Claims (Pre-Confirmation) Fuller Law Firm, P.C. | $25,000 |
| Administrative Claims (Post-Confirmation) | $ |
| Other [Describe]: | $ |
| **B. Total Payments on Effective Date** | **$82,256** |

| | | |
|---|---|---|
| **C. Net Cash on Effective Date**<br>(Plan not feasible if less than zero) | [Line A – Line B] | **$301,754** |

Case: 25-51258    Doc# 40    Filed: 11/14/25    Entered: 11/14/25 19:17:33    Page 13 of 15

EXHIBIT D

| Creditor | Claim | POC Filed | Total Distribution | Monthly Distribution | |
|---|---|---|---|---|---|
| Bank of America (Acct 2401) | 10,296.00 | N | 3,088.80 | 85.80 | |
| Bank of America (Acct 9634) | 28,129.39 | N | 8,438.82 | 234.41 | |
| Capital One (Acct 3504) | 33,068.79 | N | 9,920.64 | 275.57 | |
| Commercial Asset Recovery | 6,300.00 | N | 1,890.00 | 52.50 | |
| Commercial Asset Recovery (Acct 8057) | 111,308.89 | N | 33,392.67 | 927.57 | |
| US Auto Force | 22,993.26 | N | 6,897.98 | 191.61 | |
| Wells Fargo Bank (Acct 6176) | 6,000.00 | N | 1,800.00 | 50.00 | |
| Wells Fargo (Acct 7234) | 6,000.00 | N | 1,800.00 | 50.00 | |
| Wells Fargo (Acct 8057) | 82,391.81 | Y | 24,717.54 | 686.60 | |
| Select Funding | 175,465.00 | | 52,639.50 | 1,462.21 | Undersecured or avoided by preference |
| Subtotal | 481,953.14 | | 144,585.94 | 4,016.28 | |

Pre-pettion and Post-petition Income and Expense Comparison with Budget and Notes re Basis for Adjustment

|  | Pre-Petition | | Post-Petition | | | Budget |
|---|---|---|---|---|---|---|
| Time Period | Jan 2025-June 2025 | Monthly - 6 mo avg | Sep-25 | Oct-25 | 2 Mo. Post-pet avg | |
| Revenue | 1,165,186.54 | 194,197.76 | 153493.5 | 267205 | 210,349.21 | 210,000.00 |
| | | | | | | |
| CGS | 380,228.00 | 63,371.33 | 50934.13 | 40806.92 | 45,870.53 | 56,700.00 |
| CGS% | | 0.33 | | | 0.21 | |
| Wages, Sal PR | 406,301.00 | 67,716.83 | 64466.11 | 64939.69 | 64,702.90 | 66,705.00 |
| Rent | 73,192.00 | 12,198.67 | 12716.41 | 12716.41 | 12,716.41 | 12,720.00 |
| Adv./Marketing | 17,439.00 | 2,906.50 | 2539.57 | 2897.25 | 2,718.41 | 2,720.00 |
| Shop and Office Supplies | 7,711.00 | 1,285.17 | 5727.35 | 1108.63 | 3,417.99 | 1,285.00 |
| Office Equip/Machinery (Equip rental and lease) | 17,725.00 | 2,954.17 | | 3530.53 | 1,765.27 | 3,710.00 |
| Computer/Technology | 6,053.00 | 1,008.83 | 1125.67 | 3596.48 | 2,361.08 | 1,010.00 |
| Utilities | 15,955.00 | 2,659.17 | 3403.91 | 2442.7 | 2,923.31 | 3,000.00 |
| Vehicle | 2,254.00 | 375.67 | 449.91 | 642.86 | 546.39 | 540.00 |
| Insurance | 38,244.00 | 6,374.00 | 6688.92 | 6224.21 | 6,456.57 | 6,500.00 |
| Repairs & Maint | 2,112.00 | 352.00 | 356.8 | 107 | 231.90 | 230.00 |
| Sublet -labor | 10,937.00 | 1,822.83 | 1565 | 4423 | 2,994.00 | 2,995.00 |
| Laundry and Uniforms | 3,353.00 | 558.83 | | 745.46 | 372.73 | 375.00 |
| Other | | 0.00 | 678.6 | | 339.30 | 0.00 |
| Bank fees (2.5% of CC sales) | 22,218.00 | 3,703.00 | | 3440.63 | 1,720.32 | 3,990.00 |
| Property tax | 11,260.00 | 1,876.67 | | | 0.00 | 940.00 |
| Sales tax | 19,033.00 | 3,172.17 | | | 0.00 | 0.00 |
| Professional fees- accounting | 2,902.00 | 483.67 | | | 0.00 | 500.00 |
| Professioanl Fees-legal | 53,087.00 | 8,847.83 | | | 0.00 | 0.00 |
| Professioanl fees-consulting | 3,000.00 | 500.00 | | | 0.00 | 500.00 |
| T&E and Employee meals | 17,984.00 | 2,997.33 | 2218.26 | 2895.91 | 2,557.09 | 2,550.00 |
| Income taxes- State | | | | | | |
| Subtotal-Exp | 730,760.00 | 121,793.33 | 99718.25 | 106814.9 | 105,823.64 | 110,270.00 |
| | | | | | | |
| **Net Disposable Income** | | **9,033.09** | | | **58,655.05** | **43,030.00** |
| State income taxes | | | | | | 100 |
| **Net Disposable Income after Tax** | | | | | | **44,930** |

Explanation of Adjustments:

Bank charges are merchant charges of 2.5% on credit card sales (which are as much as 90% of total sales).

Sept. charges adjusted by merchant because of transition to DIP account; Using 6 mo prepet % of 1.9% of total sales

Equipment Lease and Rental: Used equipment lease rates fpr Section 6.01 of Plan plus $200/mo. for tool rental

Shop and office supplies: Used 6 mo pre-pet average

Sales taxes on Jan-June P&L are now reflected as pass-through items not on P&L

Computer and Technology are now only Mitchel software (shop software) at $606.01 and Quickbooks at $403

Property tax pass-thorughs are paid in 1st quarter so not reflected in post-pet. Figures

APO payments to Live Oak Banking CO. not incuded in 2 mo post-pet because will be paid contractual payments post-petition

For CGS used average % obewteen pre-pet and post-petition

Since Debtor is an S Corp. Fed taxes pass through to principal's 1040's; State taxes minimal due tof depreciation, int. and carryforwards but $800/yr. min tax

Salaries Reflect a $1,000/mo increase in payroll for each of the 2 principals elevating salary to $8,000/mo, still below the $10K/mo market rate salary